IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALONZO MORTON,

    Plaintiff,

v.                                Case No. 3:25-cv-028

FROEHLING & ROBERTSON, INCORPORATED,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS (ECF No. 5) (the "MOTION"), the MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS (ECF No. 6) ("F&R Mem."), the PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (ECF No. 10) ("Resp.", and the Defendant's REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS (ECF No. 12) ("Reply"). Having reviewed the papers and for the reasons set forth below, the MOTION will be GRANTED.

## BACKGROUND

### I. Procedural History

On January 16, 2025, Alonzo Morton ("Plaintiff" or "Morton") filed the COMPLAINT (ECF No. 1) against Froehling & Robertson, Incorporated ("Defendant" or "F&R") claiming that he had been

discriminated against in his employment with F&R because of his race and sex, and that he had been retaliated against for his participation in protected activity.

Morton presents six (6) counts in the COMPLAINT. COUNT I alleges disparate treatment and unlawful discrimination based on race and sex under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. §§ 2000e, et seq.; COUNT II alleges unlawful discrimination based on race under 42 U.S.C. § 1981; COUNT III alleges disparate treatment and unlawful race and sex discrimination under the Virginia Human Rights Act ("VHRA"), 2.2-3900, et seq.; COUNT IV alleges retaliatory discharge under Title VII; COUNT V alleges retaliatory discharge under 42 U.S.C. § 1981; and COUNT VI alleges retaliatory discharge under the VHRA.[1]

## II. Factual Background[2]

On October 9, 2023, Alonzo Morton, who is Black, began working at F&R as a Human Resources Generalist. Compl. ¶ 9. In his role as a Human Resources Generalist, Morton reported directly to HR Manager Teresa King. Id. ¶ 10. Morton was instructed by F&R HR

---

[1] COUNT VI is titled "Race and Sex Discrimination" under the VHRA, which would be an entirely duplicative claim of COUNT III. However, a review of the allegations made in ¶¶ 35-36 reveal that it is a claim for retaliatory discharge "for engaging in protected activity[.] The Court will treat it as such.

[2] The factual background is stated as it is alleged in the COMPLAINT.

Director Patricia Preston ("Preston") that part of his role at F&R was to assist management in the employee recruitment process, attend career fairs, assist in creating a recruiting calendar, and to create a presentation for F&R Chief Financial Officer Teresa Carey about how the company could benefit from internships and co-ops. Id. ¶ 11. Morton alleges that he was hired at F&R because of his experience in recruiting and knowledge of compliance with federal and state employment laws. Id. ¶ 12.

Upon starting at F&R, Morton began creating the 2024 recruiting calendar and working to identify qualified applicants. Id. ¶ 13. However, he realized that F&R was not effectively tracking demographic data of job applicants and hires. Id. Morton also noticed that F&R only employed a few Black managers, notwithstanding that the firm advertised itself as a "A Minority Owned Business Bringing Diversity to Your Team." Id. ¶¶ 13-14. At the time that Morton filed the COMPLAINT, he was only aware of two Black employees in management of F&R, with one of them being Teresa King who had just been promoted into management when Morton was hired. Id.

To assist with the creation of the recruiting calendar, Morton asked the leadership of the F&R HR Department to provide him with the demographic information and Equal Employment Opportunity data of job applicants and hires. Id. ¶ 15. Morton was informed that

3

the previous HR management team did not track such demographic information properly, so he could not be provided with the requested data. Id. He was told that management would work with the information technology team to see if that data could be retrieved. Id. Morton eventually learned of a folder that contained demographic information related to recruiting. Id. ¶ 16. However, he was allegedly only given limited access to that folder. Id. Morton then requested full access to the folder, but received "looks of confusion" and "vague answers" that, for reasons neither explained nor readily apparent, he says were designed to stall his efforts to obtain the diversity recruitment information. Id. He did not receive the demographic data before his employment terminated. Id.

Morton nonetheless continued his efforts to further diversity recruitment at F&R. Id. ¶ 17. To that end, Morton spoke with his co-worker, Katie Linthicum, about the possibility of joining the National Society of Black Engineers ("NSBE"). Id. Linthicum informed Morton that joining the NSBE was too expensive for F&R. Id. However, Morton believes this excuse was disingenuous based on the amount of money that F&R has spent on job fair recruiting efforts in the past. Id. Morton then asked HR Director Preston if F&R could attend the NSBE Career Fair. Id. Preston never provided Morton with a response. Id.

4

On November 16, 2023, about five weeks into his employment with F&R, Preston terminated Morton's employment. Id. ¶ 18. In that process, Preston assured Morton that the termination had nothing to do with his "work ethic," but that Morton's focus on recruiting projects was not the "big priority right now." Id. Preston told Morton that he had "a great personality," but criticized him as being "very aggressive, very loud, very strong." Id. Specifically, Morton was told he was too loud when speaking on the phone. Id. Preston went on to tell Morton that, "You do not communicate well. You do it by email and then things get taken out of proportion." Id. ¶ 19. Preston also informed Morton that "we are just not gelling as a group," and that "it's just a piece, just a piece. It's just not working out. You are eligible for unemployment. Nobody is going to fight that. The work that you're [sic] done is good. It's not that. It's just not working, it's not working." Id.

Preston's final stated reason in support of the termination was that he came into work too late, sometimes as late as 8:15 a.m. when the office opened at 8:00 a.m. Id. ¶ 20. Morton says that his supervisor had told him that arriving as late as 8:15 a.m. was acceptable, and, says Morton, that he rarely arrived as late as 8:15 a.m., and was usually at the office by 8:05 a.m. or 8:10 a.m. Id.

5

Further, Morton alleges that he was not alone in arriving after 8:00 a.m. because two of his female coworkers routinely arrived later than he did. Id. Morton acknowledges that Preston informed him that one of those coworkers had an acceptable excuse for arriving late because she had to drop her child off at day care, and that Preston informed him that she was planning to speak to the other woman regarding her punctuality. Id.

## DISCUSSION

I.  **Legal Standard**

   a. **Rule 12(b)(6)**

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (cleaned up). Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The Court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). So,

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570. But, "[a]lthough for the purposes of [a] motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. Twombly, 550 U.S. at 555, 127 S.Ct. 1955. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." Giacomelli, 588 F.3d at 193 (internal quotation marks omitted).

## ANALYSIS

### A. COUNTS I, II, and III: Race and Sex Based Discrimination

#### a. Framework for Analyzing COUNTS I, II, and III

Morton brings three discriminatory termination claims against F&R, each under separate statutory authority. In COUNT I, which is based on Title VII, Morton asserts that he was unlawfully fired because of his race and sex. In COUNT II, which is based on 42

U.S.C. § 1981, Morton asserts that he was unlawfully fired because of his race. Finally, in COUNT III, which is based on the VHRA, Morton asserts that he was unlawfully fired because of his race and sex. Because claims for discrimination under each of these statutes are measured by the same standard, these claims will be reviewed under the Title VII framework. _Swaso v. Onslow Cnty. Bd. of Educ._, 698 F. App'x 745, 747 (4th Cir. 2017) ("Claims of racial discrimination in employment under § 1981 and § 1983 are evaluated under the Title VII framework.") (citing _Love-Lane v. Martin_, 355 F.3d 766, 786 (4th Cir. 2004)); _McCarty v. City of Alexandria_, No. 1:24-cv-600, 2024 U.S. Dist. LEXIS 224522 (E.D. Va. Dec. 11, 2024) ("the Court will analyze Count 1 (Title VII hostile work environment claim) and Count 2 (VHRA hostile work environment claim) together, because Title VII and the VHRA use substantially identical language.").

### b. Analysis

Title VII makes it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex[.]" 42 U.S.C. § 2000e-2(a)(1). At the motion to dismiss stage for a Title VII claim, "'an employment discrimination plaintiff need not plead a _prima facie_ case of discrimination' to survive a motion to dismiss."

8

Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" Id. (emphasis added) (quoting McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015)). The Court's inquiry is, thus, whether the COMPLAINT adequately alleges facts to plausibly state a violation "above a speculative level." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

To state a legally sufficient claim of discriminatory termination based on disparate treatment, a plaintiff must allege facts that plausibly show: (i) membership in a protected class; (ii) satisfactory job performance; (iii) an adverse employment action; and (iv) more favorable treatment of someone outside the protected class with comparable qualifications. Wilcox v. Transmodal Sols., LLC, 473 F. Supp. 3d 574, 582 (E.D. Va. 2020); Coleman, 626 F.3d at 190 (applying these elements to a discriminatory termination claim). An adverse employment action "is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" Id. (quoting Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)). For the fourth element, "[a] plaintiff is not required to

9

identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means." Swaso, 698 Fed. Appx. at 748. However, "where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, '[t]he similarity between comparators … must be clearly established in order to be meaningful.'" Id. (quoting Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008)).

### i. Race-Based Discrimination under Title VII, § 1981, and the VHRA

Morton argues that each element of a case of race discrimination has been adequately alleged for purposes of Rule 12(b)(6) because:

> (1) he is Black male terminated by a white HR Director, who operated under the direction of a white female CFO; and Morton was the only male in the HR department. (2) Morton was not employed long enough to receive formal job performance evaluations, but HR Director Preston expressly told him when he was fired that "[t]he work you've done is good," and that it was not because of his "work ethic." (Comp. ¶ 18- 19) (3) Morton's dismissal from employment assuredly was an adverse employment action. (4) Preston's statements to Morton justifying his dismissal support a strong inference that unlawful discrimination undergirded the decision.

Resp. at 6. F&R argues that Morton has not alleged plausible facts sufficient to support a claim for race discrimination. F&R Mem. at 4-6.

F&R does not dispute that the first three elements for a discriminatory termination claim have been adequately alleged by Morton for purposes of a Rule 12(b)(6) motion. Morton is part of a protected class as a Black male; thus, the first element has been adequately alleged. HR Director Preston expressly told Morton that "[t]he work you've done is good," and that his termination was not because of his "work ethic;" thus, the second element has been adequately alleged. Compl. ¶ 18-19. Finally, termination of employment has been established by the Fourth Circuit as an adverse employment action; thus, the third element has been adequately alleged. Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) ("An adverse action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (internal quotation omitted).

The legal sufficiency of the claims of discriminatory termination which are in COUNTS I, II, and III which are based on race (and which are not relying on the use of comparators or a theory of disparate treatment) boils down to whether Morton has adequately alleged that his termination "occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" Swaso, 698 Fed. Appx. at 747 (quoting Adams v.

11

_Tr. of Univ. of N.C.-Wilmington_, 640 F.3d 550, 558 (4th Cir. 2011)). Morton takes the view that certain statements that Preston made during the termination meeting were based on race-based stereotypes of black males and that these statements are sufficient to supply the necessary inference of unlawful discrimination. ECF No. 10 at 6-8. Specifically, Morton points to Preston's statements (during the termination discussion) that Morton was "very aggressive, very loud, very strong." Compl. ¶ 18. Those statements, says Morton, reflects a race and sex-based stereotype of black men as being "loud" and "aggressive," which, in turn, affords a permissible inference that race and sex animated the termination of Morton's employment. That, says Morton, permits the race-based discrimination claim in COUNTS I, II, and III to survive F&R's Rule 12(b)(6) motion.

That premise is not a plausible one because many individuals, no matter their race or sex, can properly be labeled as "loud and aggressive." Thus, Preston's statement cannot plausibly be considered a race-based reason for the termination decision.[3] When considered as a whole, and viewed in the light most favorable to

---

[3] That is especially true where, as here, the COMPLAINT also alleges that Preston augmented that statement by explaining that Morton talked too loud on the phone, did not communicate well, was not "gelling" with the group, and that the employment was not working out.

Morton, COUNTS I, II, and III are conclusory and threadbare allegations that "F&R terminated Morton due to his Black race and male sex."[4] Thus, neither COUNT I, II, or III are legally sufficient to state a race-based termination claim.

That conclusion is bolstered by the Fourth Circuit's creation of a strong inference against a finding of discriminatory animus as to employees who, over a short time-span, were quickly hired and fired by the same individual. "[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991).

Here, Morton was employed for only about five weeks and was fired by the same person who hired him. COMPLAINT ¶¶ 11, 18-19. The Fourth Circuit has established that this inference can apply even to individuals whose employment is terminated as late six months after they were hired. See, e.g., Smith v. Premier Prop. Mgmt., 793 F. App'x 176, 179 (4th Cir. 2019) (applying the "strong inference of non-discrimination" to an individual fired after six

---

[4] Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

months of employment). Morton's termination after five weeks is at the short end of that measure. There are no alleged facts that sufficiently contravene the strong inference of non-discrimination. Thus, the discriminatory termination claims are amenable to being resolved at the motion to dismiss stage. Stone, 945 F.2d at 797 ("[T]he compelling nature of the inference arising from facts such as these will make cases involving this situation amenable to resolution at an early stage.").

Morton contends there should be an inference of unlawful discrimination here because, according to his reading of a concurring opinion in McIver v. Bridgestone Americas, Inc., 42 F.4th 398 (4th Cir. 2022) wherein, according to Morton, Judge Motz observed that the words "very intense" and "loud" can be "shibboleths associative of Blacks as a group, despite not being immutable characteristics synonymous with race." Resp. at 6-7. That, however, is not what the concurrence in McIver actually says. Instead, the cited part of the concurrence merely comments upon the author's perception "of the challenges faced by African American works, like McIver, who work in a predominately white environment." Id. at 413. The observations made in the concurrence certainly did not amount to a finding that the traits of loudness or aggressive behavior are synonymous with race. It is significant that having made those observations, the concurrence agreed with

the majority that McIver failed to establish racial motivation for the acts alleged to have created a hostile work environment, i.e., that the discrimination was race-based.[5] So, nothing in the McIver majority opinion or the concurrence permits a conclusion that describing someone as "loud" or "aggressive" constitutes a racially motivated statement, or that positing such a description can lead to a plausible inference of unlawful discrimination. Therefore, the COMPLAINT does not state a claim for race-based discrimination under Title VII, Section 1981, or the VHRA based on Preston's statements.

### ii. Sex-Based Discrimination under Title VII, Section 1981, and the VHRA

For the same reasons discussed in the race-based discrimination analysis, see discussion supra pp. 10-15, the statements that Preston made to Morton during the termination meeting do not lead to an inference of unlawful discrimination based on Morton's sex. And, for the same reasons, the sex-based claims in COUNTS I, II, and III fail to the extent that they are based on Preston's statements.

However, the COMPLAINT presents another theory upon which Morton bases the claims for sex-based discrimination in COUNTS I,

---

[5] And, the conditions faced by McIver were both more numerous and more egregious than those alleged by Morton.

II, and III. In particular, Morton argues that the termination of his employment occurred (at least in part) because he arrived late to work, and there were two similarly situated female coworkers who frequently arrived as late as Morton who faced no repercussions. That, of course, is a disparate treatment claim. When analyzing whether a complaint has adequately alleged a theory of disparate treatment, the Court must determine, _inter alia_, the COMPLAINT alleges that whether there was more favorable treatment of someone outside the protected class with comparable qualifications to Morton. _Wilcox_, 473 F. Supp. 3d at 582.

The COMPLAINT alleges that Preston told Morton that one of the reasons for his termination was that he was arriving at work too late. Morton agrees that he would arrive at the office as late as 8:15 a.m. when the office opened at 8:00 a.m. Compl. ¶ 20. But Morton also alleges that he was not alone in arriving late to the office. It is alleged that two female coworkers in his office routinely arrived later than he did. _Id._ According to the COMPLAINT, Preston informed Morton that one of those coworkers was late to work because she had to drop her child off and had permission to arrive late. And it is alleged that Preston told Morton that she was planning to counsel the other women regarding her punctuality. _Id._

16

Where, as here, a plaintiff relies on "comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, '[t]he similarity between comparators ... must be clearly established in order to be meaningful.'" Swaso, 698 F. App'x at 748 (quoting Lightner, 545 F.3d at 265). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." Id. (quoting Eaton v. Ind. Dep't of Corr., 657 F.3d 551, 556 (7th Cir. 2011) (internal quotation marks omitted)).

Morton has alleged that, unlike him, two female coworkers faced no repercussions for arriving late to the office. However, Morton has not alleged any factual similarity between him and the two comparators. The COMPLAINT does not plead facts that would allow the Court to compare the similarity of the comparators to Morton other than that they are female and they work in the same "office" as Morton. Compl. ¶ 20. The COMPLAINT does not offer whether the putative comparators worked in the same HR Department as Morton, who at F&R supervised them, or even what their jobs titles and responsibilities are. Without such basic information that might allow a permissible inference respecting their similarity to Morton.

17

Moreover, the COMPLAINT alleges facts that show one of the comparators is dissimilar to Morton because she had to drop her child off at day care. Id. And, it is alleged that the other comparator was to face counselling respecting the need to arrive on time. Id. In sum, the COMPLAINT does not sufficiently allege a cognizable disparate treatment claim.

For the foregoing reasons, COUNTS I, II, and III fail to state a claim for sex-based discrimination under Title VII, Section 1981, and the VHRA. They will be dismissed with prejudice.

## B. COUNTS IV, V, and VI: Discriminatory Retaliation

The COMPLAINT also asserts claims that F&R unlawfully retaliated against Morton for engaging in protected activity under Title VII (COUNT IV), 42 U.S.C. § 1981 (COUNT V), and the VHRA (COUNT VI). The elements of a retaliation claim under Title VII are: "(1) engagement in a protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action." Barbour v. Garland, 105 F.4th 579, 589 (4th Cir. 2024). The analysis of COUNTS IV, V, and VI will be done together because the elements of a retaliation claim under Title VII, §1981, and the VHRA are the same. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) ("A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements [as a Title VII claim]."); Washington v. Offender Aid &

18

<u>Restoration of Charlottesville-Albemarle, Inc.</u>, 677 F. Supp. 3d 383, 398 (W.D. Va. 2023) (applying the elements of a Title VII retaliation claim to a VHRA retaliation claim).

The parties dispute the first element—whether Morton has adequately alleged that he engaged in a protected activity. Morton argues that, through an examination of the "cumulative facts in context," he has adequately alleged that he engaged in a protected activity. Says Morton, he alleged that he "opposed" discriminatory employment practices through his "outspokenness in promoting demographically diverse hiring practices at F&R, and his persistence in seeking demographic data to measure the company commitment to diverse hiring." Resp. at 8, 11. That, however, is a material overstatement of the allegations respecting that conduct that Morton claims to be the "protected activity."

When all is said, Morton relies on two facts that, according to him, create a "mosaic of protected activity": (1) he was told by fellow F&R employee Katie Linthicum that F&R could not join the National Society of Black Engineers because it was too expensive; and (2) he was granted limited access to demographic information of past job applicants and hires at F&R. <u>Id.</u> at 8-9. Neither constitutes protected activity.

To give the facts the inferences most favorable to Morton, his theory is that he engaged in what is sometimes referred to as

19

protected "oppositional" activity. The prototypical examples of protected oppositional activity are "staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." McIver v. Bridgestone Americas, Inc., 42 F.4th 398, 411 (4th Cir. 2022) (quoting Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 257 (4th Cir. 1998)). However, activity can only be considered as "protected" when the individual engaging in it has "an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress." Id. (quoting Boyer-Liberto, 786 F.3d at 282).

The COMPLAINT does not allege that in respect of either of the two actions alleged to be protected activity Morton believed that F&R was committing any unlawful discriminatory act in violation of Title VII, § 1981, or the VHRA. Instead, Morton's allegations only rise to the level of expressing frustration with the fact that he was only granted limited access to the demographic data that he requested and that he was informed by a fellow co-worker (not even his manager or supervisor) that joining the NSBE would be too expensive for F&R. In any event, it is not objectively reasonable to conclude that Morton believed that those two events were unlawful employment practices because expressions of frustration about conditions of his employment are not the stuff

of which unlawful employment practices are made. *See Abadi v. Mecklenberg Cnty. Gov't*, No. 3:17cv435, 2019 WL 2546732, at *2 (W.D.N.C. June 20, 2019) ("The Fourth Circuit has made it clear that Title VII's antiretaliation provision is 'not a general bad acts statute,' and thus, only activities that oppose employment-related discrimination are protected from retaliation.") (quoting *Crowley v. Prince George's County, Md.*, 890 F.2d 683, 687 (4th Cir. 1989)). And, indeed, the COMPLAINT actually alleges no complainy by Morton to a superior "about suspected violations of Title VII." *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 358 (E.D. Va. 2023) (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003)). Therefore, the allegation that Morton was discharged "for engaging in protected activity of complaining to F&R management about F&R's engaging in discrimination in its efforts to recruit African Americans to work at the company," (Compl. ¶¶ 31, 33, 35), is entirely conclusory and lacks any factual support that would render his asserted beliefs plausibly held (if they were held at all).

Morton fails to respond to any of the cases cited by F&R on this very significant point, and instead only cites, in support of his position, the Second Circuit's decision in *Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015) and the Fourth Circuit's

decision in DeMasters v. Carilion Clinic, 796 F.3d 409 (4th Cir. 2015). The courts in Littlejohn and DeMasters both found that a plaintiff had adequately alleged the element of protected activity based on their advocacy, on behalf of fellow employees, to their employers in light of what they reasonably believed to be unlawful acts of discrimination. See Littlejohn, 795 F.3d at 318-319 (finding that the plaintiff, employed as an EEOC Director, participated in protected activity when she had advocated for employees who had made discrimination claims and objected against discriminatory practices of the employer); see also DeMasters, 796 F.3d at 418-421 (establishing protected activity where an individual, who was working in an employee assistance program, advocated on behalf of a fellow employee who had reported to management claims of sexual harassment). But that is not what is alleged in this case. Nothing in COUNTS IV, V, and VI bring Morton's case near the allegations made in Littlejohn or DeMasters. There are no allegations that Morton was complaining of any acts that he believed constituted unlawful discrimination. Therefore, COUNTS IV, V, and VI will be dismissed as they fail to state a claim on which relief can be granted.

## CONCLUSION

For the reasons set forth above, the DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS (ECF No. 5) will be GRANTED and COUNTS I-VI will be dismissed for failure to state a claim upon which relief can be granted. The action will be dismissed with prejudice and without leave to amend because Morton's paper disclose that there is no basis for any amendment that could infuse any of those COUNTS with legal sufficiency.

_____ /s/ *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June *16*, 2025

23